**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| WILLIAM GROSS and 247 ATLAS TRANSPORTATION LLC,[1] <br><br> Plaintiffs, <br><br> v. <br><br> SCHNEIDER LOGISTICS, INC, PALOGIX SUPPLY CHAIN SERVICES, EPES LOGISTICS SERVICES, INC., and FORD MOTOR COMPANY, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 2:25-cv-02611-TLP-cgc |

**ORDER GRANTING MOTIONS TO DISMISS**

In June 2025, Plaintiff William Gross ("Gross"), doing business as 247 Atlas

Transportation LLC ("Atlas"), sued Defendants Schneider Logistics, Inc ("Schneider"), Palogix

Supply Chain Services ("Palogix"), Epes Logistics Services, Inc. ("Epes"), and Ford Motor

Company ("Ford") (collectively "Defendants"). (ECF No. 1.) He amended his Complaint

almost two weeks later. (ECF No. 11.) Plaintiff alleged that Defendants engaged in a civil

conspiracy to deprive him of his constitutional rights in violation of 42 U.S.C. § 1985, the Equal

Protection Clause, and the First Amendment, and to engage in intentional interference with his

business relationships. (ECF No. 11 at PageID 42.) A few days after amending his Complaint,

he moved for a preliminary injunction. (ECF No. 12.) Defendants all moved to dismiss in mid-

---

[1] The Court respectfully **DIRECTS** the Clerk to modify the docket to reflect that William Gross is the sole Plaintiff and is doing business as 247 Atlas Transportation LLC. (*See* ECF No. 11 at PageID 42.)

August under Federal Rules of Procedure 12(b)(4), (5), and (6).  (ECF Nos. 29-1, 30-1, 31-1.)

Gross responded.[2]  (ECF Nos. 34–36.)  And Defendants replied.  (ECF Nos. 41–43.)  Because

Defendants' arguments largely overlap, the Court addresses all three Motions to Dismiss here.

For the reasons explained below, the Court **GRANTS** Defendants' Motions to Dismiss.

### BACKGROUND

Gross, an independent trucking owner-operator who runs Atlas, started trucking in early

2021.  (ECF No. 11 at PageID 44.)  As an independent trucker, Gross drove routes for many

companies including Epes.  But over time, he narrowed his focus and began operating solely as a

trucker for Epes.  (*Id.* at 45.)  He would run inbound and outbound shipments for Epes between

Memphis and Houston ("Memphis-Houston Lane")[3].  (*Id.*)  Based on Gross' performance

handling the Memphis-Houston Lane, Epes guaranteed his company lane operation.  (*Id.*)  And

so Gross bought three more trucks and began operating on the Memphis-Houston Lane five

nights a week.  (*Id.*)  He earned a gross revenue of $1,435,080 annually.  (*Id.*)

On July 31, 2024, Gross sued ("Original Suit") these Defendants in this Court, alleging

fraud and illegal double-brokering of freight.  (*Id.*)  He served Ford with the Original and

Amended Complaint on December 13, 2024, and January 8, 2025, respectively.  (*Id.*)  He served

Schneider with those documents on January 13, 2025, and March 12, 2025, respectively.  (*Id.*)

He served Epes on December 8, 2024, and January 13, 2025, respectively.  (*Id.*)  And he served

Palogix on December 17, 2024, and December 22, 2024, respectively.[4]  (*Id.* at PageID 46.)

---

[2] Gross also seeks to amend the Complaint a second time to address deficiencies identified by
Defendants.  (*See* ECF Nos. 34-1, 35-1, 36-1.)

[3] According to Gross, trucking routes are commonly called "lanes."  (ECF No. 11 at PageID 45.)

[4] The Court is inferring this by process of elimination.  Paragraph 17 of the Amended Complaint
does not reference a defendant, and Palogix is the only unnamed defendant in Paragraphs 14–17.
(*See* ECF No. 11 at PageID 45–46.)

2

Epes then terminated Gross' employment on December 10, 2024, two days after he served it with the Original Suit. (*Id.*) That same day, Palogix allegedly messaged Ford and Schneider to inform them that Gross and Atlas "would no longer be used to run the [Memphis-Houston Lane]." (*Id.*) On December 14, 2024, Gross received a demand letter from Epes counsel threatening legal action if he did not dismiss the Original Suit. (*Id.*) After this, other unspecified brokers refused to work with Atlas. (*Id.*) Gross alleges that Palogix contacted the other Defendants leading Epes to terminate his employment. (*Id.* at PageID 47.) As a result, Gross lost substantial income. (*Id.* at PageID 49.) He also asserts that Defendants have damaged his reputation. (*Id.*)

Gross alleges that Defendants conspired to terminate his employment and exclude him from the trucking industry because Gross is an independent trucker and a man. (*Id.* at PageID 47.) He also alleges that Defendants took these actions in response to the Original Suit, which Gross asserts revealed Defendants' fraudulent double-brokering scheme. (*Id.* at PageID 46.) Gross claims that the alleged conduct of the Defendants violated 42 U.S.C. § 1985(2), (3), the Equal Protection Clause, and the First Amendment. (*Id.* at PageID 46–48, 51.) He also asserts that Defendants' conduct amounts to tortious interference with business relationships—his relationship with Epes and other unspecified brokers. (*Id.* at PageID 48–51.)

Defendants moved to dismiss Gross's Amended Complaint. (ECF Nos. 29–31.) They make many overlapping arguments about the flaws in the Amended Complaint. So the Court will summarize them here. Epes and Palogix argue that Gross did not properly serve Epes with the Complaint because he left the Summons and Complaint unattended at the door of Epes's registered agent. (ECF No. 29-1 at PageID 112–13.) They also argue that Gross did not properly name Palogix in the Complaint, the Summons, and the Amended Complaint. (*Id.* at

PageID 113–114.)  Ford adds that Gross has not pleaded a viable theory of liability against it.

(ECF No. 31-1 at PageID 149–52.)  It denies that Gross has alleged any facts, beyond conclusory

allegations, that Schneider is either Ford's alter ego or agent.  (*Id.* at PageID 150–52.)  Finally,

Ford asserts that, if Gross is bringing aiding and abetting claims against it, he has not alleged

enough facts to establish that Ford knew about any co-defendant's conduct or gave them

substantial assistance or encouragement.  (*Id.* at PageID 161–62.)[5]

Besides the four arguments above, Defendants argue mostly the same points against

Gross.  (*See* ECF Nos. 29-1, 30-1, 31-1.)  First, they all assert that Gross's Amended Complaint

is a "shotgun pleading" in violation of Federal Rules of Civil Procedure 8 and 10.  (*See e.g.*, ECF

No. 29-1 at PageID 114–15.)  The crux of this argument is that Gross violated Rule 8(a)(2) and

10(b) by including more than one event or set of circumstances in individually numbered

paragraphs and by failing to separate the allegations in the Amended Complaint into separate

counts.  (*Id.*)  Defendants assert that they cannot discern which claims or causes of action apply

to which Defendant, depriving them of fair notice of the claims brought against them.  (*Id.*)

Second, Defendants argue that Gross's equal protection and First Amendment claims fail

because all the Defendants are private businesses, not state actors.  (*See e.g.*, ECF No. 30-1 at

PageID 137.)  They also note that Gross did not specify whether his equal protection claim is

brought under the Fifth or Fourteenth Amendment.  (*Id.*)  Either way, Defendants insist that

claims brought under the First, Fifth, and Fourteenth Amendments must be made against state

actors and not purely private businesses.  (*Id.*)

---

[5] While the Court reiterates Epes's, Palogix's, and Ford's unique claims, it does not decide them
because their resolution is unnecessary to the Court's ultimate decision.

Third, as for Gross's § 1985(2) claim, Defendants insist that § 1985(2) "forbids a conspiracy to deter a party from attending or testifying in court . . . [or] punishing parties . . . for having attended or testified in federal court." (*Id.* at PageID 118 (internal quotation marks omitted).) And Defendants argue that he did not allege that he was deterred from testifying, nor did he allege enough facts to support the existence of a conspiracy. (*See e.g.*, 29-1 at PageID 118–120.) Defendants continue that filing a complaint is not testifying in or attending federal court. (*Id.* at PageID 119.) Gross has not therefore alleged that he attended or testified in federal court or was deterred from doing so. (*Id.*) Defendants also assert that Gross did not allege how they conspired to terminate his employment or prevent his employment elsewhere. (*Id.* at PageID 120.)

Fourth, Defendants challenge Gross's § 1985(3) claim. They do so on the grounds that (1) Gross did not adequately plead the existence of a conspiracy and (2) Gross did not allege that the conspiracy was based on any discriminatory animus. (*See e.g.*, ECF No. 30-1 at PageID 135–36.) Defendants point out that independent truckers are not a protected class under the Equal Protection Clause. (*Id.*) And they assert that Gross alleged no facts to support his claim that Defendants conspired against him based on his sex. (*Id.*)

And fifth, Defendants argue that Gross did not allege enough facts to support his claims for intentional interference with business relationships. (*See e.g.*, ECF No. 31-1 at PageID 158.) Defendants assert that Gross did not allege facts to support that he had a business relationship with Epes or that the other Defendants knew of any relationship between the two. (*Id.* at PageID 159–60.) Nor did Gross plausibly allege that any of Epes's co-defendants intended to breach his relationship with Epes. (*Id.* at PageID 160.) And Defendants insist that Gross did not plausibly allege that any of the co-defendants had improper motive or used improper means. (*Id.* at

PageID 160–61.)  Epes and Palogix add that, to the extent that Gross asserts that Defendants

interfered with his business relationships with third parties, he has identified no third parties with

which he had a business relationship or prospective business relationship.  (ECF No. 29-1 at

PageID 116–17.)

Gross responded to all the Motions to Dismiss separately.  (ECF Nos. 34–36.)  He denies

that the Amended Complaint amounts to an impermissible shotgun pleading.  (*See e.g.*, ECF No.

34 at PageID 167–69.)  He asserts that he has plausibly shown that (1) Epes terminated his

employment shortly after he served his Complaint in the Original Suit and (2) that the co-

defendants communicated with each other and knew about his termination around the time Epes

fired him.  (*Id.*)  Thus he argues that the Court can plausibly infer a conspiracy, Defendants can

understand their alleged role in the conspiracy, and the paragraphs in the Amended Complaint

are properly numbered.  (*Id.*)

Gross asserts that he has plausibly alleged his § 1985(2) claim because he served Epes in

the Original Suit close in time to his termination.  (*See e.g.*, ECF No. 35 at PageID 204–06.)  He

also insists that he alleges enough facts to plausibly plead a conspiracy.  (*Id.* at PageID 206–07.)

He argues that he plausibly pleads his § 1985(3) claim for two reasons.  First, Gross asserts that

Defendants infringed on two of his constitutional rights: the right to travel and the right to earn a

living.  (*See e.g.*, *Id.* at PageID 209–10.)  According to Gross, this infringement makes a showing

of class-based discrimination unnecessary.  (*Id.*)  Gross also argues that he has alleged that

Defendants discriminated against him because of his status as an independent trucker and a man.

(*Id.* at PageID 210–11.)  He adds that the Court can take judicial notice of the "common

knowledge that most over-the-road truck drivers are male," thus providing a discriminatory

ground for the § 1985(3) claim.  (*Id.* at PageID 211.)

6

Gross concedes that he failed to plausibly assert his First Amendment claim.  (*See e.g.*, ECF No. 36 at PageID 247.)  But he then argues that his equal protection claim, which he describes in his Responses as "Fourteenth Amendment liability," are viable even though he is suing private businesses.  (*Id.* at PageID 246–47.)  But Gross confuses his equal protection claim with his § 1985(3) claim.  (*See id.*)  For example, Gross argues he can bring a § 1985(3) claim against private parties, which Defendants do not contest, and fails to argue that he can bring his equal protection claim against private parties, which Defendants do contest.  (*See id.*)

Finally, Gross insists that he plausibly pleaded his intentional interference with business relationships claim against Epes and Schneider.  (*See e.g.*, ECF No. 34 at PageID 179–82.)  He insists that he has alleged enough facts to plausibly plead that Defendants intentionally coordinated to terminate his employment at Epes and prevent him from working with other brokers.

Gross requests that the Court allow him to pursue his Amended Complaint , even after Defendants pointed out that he did not receive leave from the Court to amend the Complaint in the first place.  (*Id.* at PageID 182.)  And Gross now seeks leave to amend his Complaint yet again.  (*Id.*)  This time, he wants to clarify that he did not discover any member entities for Palogix.  (*See* ECF Nos. 34-1. 35-1, 36-1.)

And Defendants replied to Gross's Responses. (ECF Nos. 41–43.)  The Replies restate their positions that Gross has not pleaded enough factual allegations to support his claims and that the Amended Complaint is a shotgun pleading.  (ECF Nos. 41–43.)  They also reargue that filing a complaint is not enough to generate liability under § 1985(2).  (ECF Nos. 41–43.)  And they reassert that Gross has identified no discrimination based on a protected class as required to create liability under § 1985(3).  (ECF Nos. 41–43.)  They emphasize that Defendants are not

7

state actors subject to liability under the First Amendment or Equal Protection Clause and that

Gross has effectively conceded this argument. (ECF Nos. 41–43.) Finally, all Defendants

reiterate that Gross has not pleaded enough facts to show Defendants interfered with any

business relationships and that any of them engaged in improper means of interference or with

improper motives. (ECF Nos. 41–43.) Ford adds in its Reply that Gross failed to meaningfully

address many of its arguments. (*See* ECF No. 43.) In fact, Ford points out that much of Gross's

Response to its position addresses Schneider's conduct without showing that Schneider is an

agent or alter ego of Ford. (*Id.*)

The Court will now lay out the applicable legal standards.

## **LEGAL STANDARD**

Rule 15 of the Federal Rules of Civil Procedure governs amendments to complaints. It

provides that "[a] party may amend its pleading once as a matter of course no later than: (A) 21

days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21

days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b),

(e), or (f), whichever is earlier." Fed R. Civ. P. 15(a)(1). "In all other cases, a party may amend

its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). A court should freely grant leave to amend a complaint "when justice so requires." *Id.*

"In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, *futility

of amendment*, etc.—the leave sought should, as the rules require, be 'freely given.' " *Foman v.

Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (emphasis added). "A court may

deny a motion to amend if it 'concludes that the pleading as amended could not withstand a

8

motion to dismiss.'" *Chunn v. S.E. Logistics, Inc.*, 794 Fed. Appx. 475 (6th Cir. 2019) (unpublished) (quoting *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005)).

When deciding whether a complaint states a claim on which relief can be granted, courts apply the standard of Federal Rules of Civil Procedure 8 and 12(b)(6), which the Supreme Court explains in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." It need only give the defendant fair notice of the claim and the grounds for the claim. To survive a motion to dismiss, a plaintiff must allege enough facts to "state a claim to relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In other words, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. And the ruling court must accept all factual allegations as true. *See Crawford*, 15 F.4th at 762.

But it need not accept a plaintiff's legal conclusions or make unreasonable inferences in favor of a plaintiff. *See id.*; *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). Instead, the "complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Arsan v. Keller*, 784 F. App'x 900, 909 (6th Cir. 2019) (quoting *Commercial Money Ctr. v. Ill. Union Ins.*, 508 F.3d 327, 336 (6th Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). What is more, when reviewing a motion to dismiss, the ruling court generally restricts its review to the

9

face of the complaint.  *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 698 (6th Cir. 2022).  Still, in reviewing a motion to dismiss, "a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein."  *Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th 403, 410 (6th Cir. 2024).

Before a federal district court hears a lawsuit, it must have jurisdiction.  *Pollington v. G4S Secure Sols. (USA) Inc.,* 712 F. App'x 566 (6th Cir. 2018) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998)).  The Court has an obligation *sua sponte* to consider whether it has subject matter jurisdiction.  *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction the court must dismiss the action.").

One avenue is through diversity jurisdiction under 28 U.S.C. § 1332, which requires complete diversity of citizenship among the parties and an amount-in-controversy greater than $75,000.  The party invoking diversity jurisdiction bears the burden of establishing the citizenship for all parties with competent proof.  *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi,* 43 F.4th 624, 627 (6th Cir. 2022); *Hertz Corp. v. Friend*, 559 U.S. 77, 96–97 (2010).

For limited liability companies (LLCs), the question of citizenship can be tricky.  That is because, unlike a corporation[6], an LLC is deemed to "have the citizenship of each partner or member."  *Delay v. Rosenthal Collins Group, LLC,* 585 F.3d 1003, 1005 (6th Cir. 2009).  The *Delay* court explained that*,* "because a member of a limited liability company may itself have

---

[6] A corporation is a citizen of any state in which it was incorporated and the state in which it has its principal place of business.  28 U.S.C. § 1332(c)(1).  A corporation's principal place of business is the location where its high-level officers "direct, control, and coordinate the corporation's activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

multiple members—and thus may itself have multiple citizenships—the federal court needs to know the citizenship of each 'sub-member' as well." *Id.* If the court is alerted to an issue in diversity jurisdiction, the issue must be addressed. *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354, 357–56 (6th Cir. 2010); *Wis. Dep't of Corrs. v. Schacht,* 524 U.S. 381, 389, 118 S. Ct. 2047, 141 L.Ed.2d 364 (1998) ("No party can waive the defect [concerning diversity jurisdiction] or consent to jurisdiction. No court can ignore the defect; rather a court, noticing the defect, must raise the matter on its own.") (internal citations omitted).

## ANALYSIS

### I.    Violations of FRCP 8(a)(2) and 10(b)

All Defendants have alleged that the Amended Complaint is an impermissible "shotgun pleading." (*See e.g.*, ECF No. 29-1 at PageID 114–15.) The thrust of this argument is that the Amended Complaint is so vague and confusing that it violates Federal Rules of Civil Procedure 8 and 10. (*Id.*) Rule 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(d)(1) requires each allegation to be "simple, concise, and direct." And Rule 10(b) requires that each paragraph in a pleading be numbered and contain a single set of circumstances. And, if needed for clarity, a complaint must be split into separate counts for each claim that is based on a separate transaction or occurrence.

Gross argues in response that the Amended Complaint complies with both Rules 8 and 10. (*See, e.g.*, ECF No 34 at PageID 167–69.) He emphasizes the low bar for a complaint to survive a motion to dismiss under the *Twombly* and *Iqbal* standard. (*Id.*) And he asserts that he has alleged enough facts to plausibly state his claims. (*Id.*)

The Amended Complaint is hard to grasp. For example, Gross never indicates whether he brings his equal protection claim under the Fifth Amendment or Fourteenth Amendment. He never clarifies who the "other brokers" are with which Defendants have prevented him from

11

working.  Nor does he explain whether he had existing or prospective business relationships with those other brokers.  He claims at multiple points that Epes terminated his employment (*See, e.g.*, ECF No. 11 at PageID 46,) and at other times, that the other Defendants did so.  (*See, e.g.*, *Id.* at PageID 47)  He claims to have an employment contract with Epes, while being an independent contractor.  (*Id.* at PageID 50.)

Perhaps Gross himself was confused by his own claims.  When Defendants argued that Gross could not bring an equal protection claim because none of the Defendants were state actors, Gross tried to defend the equal protection claim by arguing in support of his § 1985(3) claim.  (*See* ECF No. 34 at PageID 177–79.)  More generally, the Amended Complaint is a hodgepodge of conclusory allegations, legal conclusion, and a few factual allegations.  It is not broken up in to separate counts for clarity.  And many of the numbered paragraphs are long and relate to different sets of circumstances.  (*See e.g.*, ECF No. 11 at PageID 46–47.)  And Gross's proposed Second Amended Complaint is only marginally better.  (*See* ECF No. 34-1.)

Still, a complaint need only give the defendant fair notice of the claim and the grounds for the claim and allege enough facts to "state a claim to relief that is plausible on its face." *Crawford v. Tilley*, 15 F.4th 752, 762 (6th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The notice pleading standard is not a high bar.  And the cases cited by Defendants in support of dismissal on this ground are distinguishable.  They deal with complaints that are much longer and more confusing than the one here.  *See Finley v. Kondaur Capital Corp.*, 909 F. Supp. 2d 969 (W.D. Tenn. 2012); *Brewster v. Wells Fargo Bank, N.A.*, No. 11-1232-JDB-EGB, 2012 WL 4024749, at \*3–4 (W.D. Tenn. Sept. 12, 2012) (collecting cases); *Lee v. Ohio Educ. Assn.*, 951 F.3d 386 (6th Cir. 2020).  And yet, "[i]t is not the role of the court to guess the nature of the claim(s) asserted." *Smith v. MERS*, No. 10-12508, 2011 WL 4469148, at \*4 (E.D. Mich.

Aug. 4, 2011), *report and recommendation adopted*, No. 10-12508, 2011 WL 4479481 (E.D.

Mich. Sept. 27, 2011) (internal quotations marks omitted).  For all that, the Amended Complaint

here asks the Court and Defendants to guess about the nature of several claims.

In the end, the Court need not decide whether the Amended Complaint or proposed

Second Amended Complaint violate Rules 8 or 10.  The Court is granting the Motions to

Dismiss on different grounds and declines to decide this issue.

## II.    Constitutional Claims

Defendants challenge both of Gross's constitutional claims.  They argue that they are not

state actors liable for violating the First, Fifth, or Fourteenth Amendments.  (*See* ECF No. 31-1 at

PageID 137–38.)  Gross does not dispute that argument.  (*See, e.g.*, ECF No. 34 at PageID 177–

79.)  In fact, he concedes that his First Amendment claim fails, as noted above.[7]

The Court agrees with Defendants.  *See Johnson v. Tyson Foods, Inc.*, 607 F.Supp.3d

790, 799 (2022) ("It is well-settled that an entity is only liable for claims based on constitutional

violations if the entity is held to be a government actor.") (citing *Dusenbery v. United States*, 534

U.S. 161, 167 (2002); *Cochran v. Gilliam*, 656 F.3d 300, 306 (6th Cir. 2011)); *Black v.*

*Barberton Citizens Hosp.*, 134 F.3d 1265, 1267 (6th Cir. 1998) (citing *Moose Lodge No. 107 v.*

*Irvis*, 407 U.S. 163, 172 (1972)).  The First Amendment and Equal Protection Clause prohibit

state actors from violating one's rights.[8]  And Defendants are private parties.  Gross alleges no

facts here to suggest otherwise.  The Court therefore **GRANTS** Defendants' Motions to Dismiss

Gross's First Amendment and Equal Protection Clause claims.

---

[7] Gross's proposed Second Amended Complaint drops his constitutional claims.  (*See* ECF No. 35-1.)

[8] This is true whether Gross's equal protection claim is under the Fifth or Fourteenth Amendment.

13

III.    **42 U.S.C. § 1985(2), (3) Conspiracy Claims**

A.    **42 U.S.C. § § 1985(2)**

Gross asserts that Defendants conspired to violate 42 U.S.C. § 1985(2) by discouraging him from filing his Complaint.  (*See* ECF No. 11 at PageID 48.)  In short, 42 U.S.C. § 1985(2) addresses a conspiracy to prevent a person from attending or testifying in federal court.  Defendants insist here that Gross has not alleged enough facts to show a conspiracy or that he was deterred from testifying at all.  (*See e.g.*, ECF No. 31-1 at PageID 153–55 (citing *Allen v. Allied Plant Maintenance Co. of Tennessee*, 636 F. Supp. 1090 (M.D. Tenn. 1986)).)  Gross replies that he alleged not only enough facts to show a conspiracy but also enough facts to show that Gross was deterred from testifying in a federal proceeding under *Allen*.

> This Court has described the structure of § 1985(2).

> Subsection 1985(2) contains two separate clauses separated by a semi-colon. The first clause forbids a conspiracy to deter a party or witness in a federal court from attending or testifying in court, to punish parties or witnesses for having attended or testified in federal court, or to influence or punish federal jurors. . . .

> The second clause applies to conspiracies to obstruct the course of justice in state courts. Under the second clause, Plaintiffs must demonstrate that there was some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

*Gary v. Shelby Cnty. Govt.*, No. 2:18-CV-02756-TLP-TMP, 2020 WL 533185, at *4 (W.D. Tenn. Feb. 3, 2020).  Defendants note that Gross fails to specify which part of § 1985(2) he claims they violated.  But they assume that, since the Original Suit was a federal lawsuit, Gross must be asserting that Defendants "conspire[ed] to deter . . . any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein . . . or to injure such party or witness in his person or property on account of his having so attended or testified . . . ."  42 U.S.C. § 1985(2).  Gross does not dispute this assumption.  (*See e.g.*, ECF

14

No. 35 at PageID 203–06.)  In fact, he argues, in his Responses, that he has plausibly asserted a claim "under the first part of 28 [sic] U.S.C. § 1985(2)."  (*Id.* at PageID 206.)

Defendants cite *Allen* for the holding that "[f]iling a lawsuit in district court, however, does not amount to having 'attended or testified' in federal court for the purposes of Section 1985(2)."  (ECF No. 31-1 at PageID 154.)  The Court in *Allen* found that suing in federal court is not enough to state a claim under § 1985(2) "because it hinges on alleged retaliation for the filing of a suit in federal court" which "fails to allege a nexus between an alleged conspiracy and a federal court proceeding."  *Allen*, 636 F. Supp. at 1095.  Relying on the plain text and legislative history of § 1985(2), the *Allen* court reasoned that the word "attend" requires a "physical presence in court."  *Id.* at 1094.  And so § 1985(2) prohibits retaliation against a witness or party who attends court or testifies physically at a federal proceeding.  It concluded that Congress declined to prohibit retaliation for filing a claim in federal court.  *Id.* at 1095.

The decision of the *Allen* court is persuasive authority, but the Court need not rely on the reasoning in *Allen* to reach the same result here.  The Court can rest on the plain meaning of the text of § 1985(2) alone.  Under a plain reading of the text, filing a complaint is neither attending court nor testifying at a pending proceeding.  The Court looks to dictionary definitions to find the plain meaning.  *See Corner Post, Inc. v. Bd. of Governors of Fed. Reserve System*, 603 U.S. 799 (2024).  For example, Merriam-Webster's Dictionary defines testify as "to make a solemn declaration under oath for the purpose of establishing a fact."  *Testify*, Merriam-Webster, https://www.merriam-webster.com/dictionary/testify (last visited Mar. 17, 2026).  And it defines attend as "to be present at: to go to."  *Attend*, Merriam-Webster, https://www.merriam-webster.com/dictionary/attend (last visited Mar. 17, 2026).  Meanwhile, Black's Law Dictionary

15

defines testimony as "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or deposition." *Testimony*, Black's Law Dictionary (12th ed. 2024).

By filing a complaint, Gross does not give evidence under oath, at trial, or to establish fact. The complaints are neither affidavit nor the product of a deposition. They did not require Gross to be present at any federal proceeding. The Amended Complaint lists Gross's unproven allegations against Defendants. And therefore filing a complaint is not testimonial nor is it attending a proceeding. What is more, because the language of the statute is "testifying to any matter *pending* therein," filing a complaint, which initiates a lawsuit, would not be testifying about a *pending* matter, even if it were testimonial.

The Court declines to consider the legislative history of this Reconstruction Era statute, nor does it tie attending or testifying to a plaintiff's physical presence at the courthouse. It need not wade into the grey areas of the scope of § 1985(2) because this question does not exist in those grey areas. At bottom, the language of § 1985(2) does not support Gross's attempt to shoehorn what is effectively an employment dispute into a civil rights cause of action. He has not alleged that he was deterred from or injured for *attending* or *testifying* in a federal judicial proceeding. The Court finds therefore that Gross has not plausibly stated a claim under 42 U.S.C. § 1985(2). As a result, the Court **GRANTS** Defendants' Motions to Dismiss on Gross's § 1985(2) claim.[9]

**B.    42 U.S.C. § 1985(3)**

Gross brings a claim under 42 U.S.C. § 1985(3), too. He alleges that Defendants' acts "were intended to deprive Plaintiff of the equal protection of the laws or of equal privileges and

---

[9] The Court need not address Defendants' argument that Gross has not alleged enough facts to establish a conspiracy.

immunities under the laws with a predominant purpose of depriving Plaintiff of the right to interstate travel from Memphis to Houston in the course of his employment with Defendant Epes," in violation of § 1985(3).  (ECF No. 11 at PageID 47.)  He also insists that Defendants' acts "constituted a class-based, invidiously discriminatory animus against Plaintiff, who is an independent trucker" and "evince malicious discrimination against men and are unlawful and impermissible sex-based invidious discrimination."  (*Id.*)

Defendants argue that Gross did not plausibly state a claim under § 1985(3).  They assert that he once again failed to allege enough facts about the conspiracy (ECF No. 30-1 at PageID 135), and the Amended Complaint is "completely devoid of any racial or otherwise class-based invidiously discriminatory animus."  (ECF No. 31-1 at PageID 157.)  They add that the status of "independent trucker" is not a protected class under § 1985(3).  (*Id.* at PageID 156–57.)  And they argue that Gross's claim of discrimination on the basis of his sex depends on a singular conclusory allegation.  (*Id.* at PageID 157.)  And that allegation is not supported by any factual allegations that explain how Gross's sex influenced Defendants' decision-making process.  (*Id.*) In short, Defendants argue that Gross has not alleged enough facts to plausibly show the discriminatory animus needed to state a claim under § 1985(3).

Defendants are correct.  Section 1985(3) creates liability when "two or more persons" injure another through a conspiracy "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws."  42 U.S.C. § 1985(3).[10]  The Sixth Circuit has clarified that to bring

---

[10] A § 1985(3) claim has four elements.

(1) The existence of a conspiracy;

17

a claim under § 1985(3), a plaintiff must allege discrimination "based on race or membership in another class compromising 'discrete and insular minorities that receive special protections under the Equal Protection Clause because of inherent personal characteristics.'" *Royal Oak Ent., LLC v. City of Royal Oak, Michigan*, 205 Fed. Appx. 389, 399. (6th Cir. 2006) (quoting *Volunteer Med. Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir.1991)).

Gross insists that he need not prove discriminatory animus when he has alleged that Defendants have conspired to deprive him of rights guaranteed to all under the Constitution. (ECF No. 35 at PageID 210.)  He cites *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott* in support of this position. (*Id.* (quoting *United Bhd. of Carpenters and Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 834–35. (1983)).)  But even the language that Gross quoted—which might be better described as paraphrased—and is originally from *Griffin v. Breckenridge*, does not support his contention.  In that quote, the Supreme Court explains that "[t]he language requiring intent to deny equal protection, or equal privileges and immunities, indicates that there *must be some racial, or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' actions." *United Brotherhood*, 463 U.S. at 834–35. (1983) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis added)).  The Supreme Court declared that a showing of discriminatory animus was a necessary

---

(2) the purpose of the conspiracy was to deprive any person or class of persons the equal protection or equal privileges and immunities of the law;

(3) an act in furtherance of the conspiracy; and

(4) injury or deprivation of a federally protected right.

*Calvin v. City of Memphis*, No. 2:08-CV-02512-DKV, 2010 WL 11601729, at *2 (W.D. Tenn. June 30, 2010) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971); *Royal Oak Entm't, LLC v. City of Royal Oak*, 205 Fed.Appx. 389, 399 (6th Cir. 2006)).

18

element of a § 1985(3) in both *Griffin* and *United Brotherhood*.  Thus Gross's assertion that he need not show any discriminatory animus is incorrect.

And the Sixth Circuit has also clarified that the discriminatory animus must be on the basis of  "race or membership in another class compromising 'discrete and insular minorities that receive special protections under the Equal Protection Clause because of inherent personal characteristics.'" *Royal Oak Ent., LLC,* 205 Fed. Appx. at 399 (quoting *Volunteer Med. Clinic, Inc. v. Operation Rescue,* 948 F.2d 218, 224 (6th Cir.1991)).  This Court knows of no case, and the Parties have cited none, which provides independent truckers with special protections under the Equal Protection Clause.  To try to remedy this obstacle, Gross asserts that he has alleged enough facts to support his claim that Defendants discriminated against him on the basis of his sex.  To support this claim, he argues that the Court can take judicial notice that "most over-the-road truck drivers are men."  (ECF No. 35 at PageID 211.)

To be sure, sex is a classification that receives special protection under the Equal Protection Clause and § 1985(3).  *See United States v. Virginia*, 518 U.S. 515 (1996); *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994)) ("[a] class protected by section 1985(3) must possess the characteristics of a discrete and insular minority, such as race, national origin, or *gender*") (emphasis added).  But this fact does not save Gross's claim.  Even if the Court were to take judicial notice that most truck drivers are men, Gross has still failed to allege sex discrimination with anything more than conclusory statements.  (*See* ECF No. 11.)

He does not allege how his status as a male factored into the Defendants' alleged decision to terminate Gross's business relationship with Epes and blackball him from the trucking industry.  In fact, the conclusory statement that Defendants' conduct amounts to sex-based

19

discrimination conflicts with the reasoning in the rest of the Amended Complaint. Remember the core of Gross' position is that Defendants retaliated against them for filing his Complaint in the Original Suit, which revealed Defendants' allegedly unlawful double-brokering scheme. Except for the words "[t]he acts of the Defendants, individually and severally, evince malicious discrimination against men and are unlawful and impermissible sex-based invidious discrimination," Gross makes no allegations that Defendants' conduct was based on his sex. (*Id.* at PageID 210.)

Gross has not alleged enough facts to support a § 1985(3) claim at the Motion to Dismiss stage because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plausibly plead a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see Stewart v. Shelby Cnty.*, No. 18-2522- JDT-CGC, 2019 WL 3804264, at * (W.D. Tenn. Aug. 13, 2019) (dismissing Section 1985(3) claim because "[plaintiff] generally alleges that [defendant] conspired against him because of his race and allowed or encouraged others to do the same. However, [plaintiff] provides no facts in support of these conclusory allegations, which the Court need not accept as true."). The proposed Second Amended Complaint, while clarifying explicitly that Gross is a man, does not remedy this flaw. (*See* ECF No. 35-1.) The Court therefore **GRANTS** Defendants' Motions to Dismiss on Gross's § 1985(3) claim.[11]

## IV. Subject Matter Jurisdiction

Given the problems in each of Gross's federal causes of action, Defendants challenge the Court's subject matter jurisdiction. In Defendants Epes and Palogix's Motion to Dismiss, they note "that the Amended Complaint asserts diversity jurisdiction based on Plaintiff residing in

---

[11]The Court, once again, need not address Defendants' argument on his claim of a conspiracy.

20

Mississippi and Defendants being citizens of other states but does not allege (as required) the citizenship of all LLC members, raising a defect in establishing diversity for the LLC-entity Plaintiff."[12] (ECF No. 29-1 at PageID 112.)  In response, Gross seeks to amend the Amended Complaint "to correct the deficiencies in the naming of Defendant Palogix Supply Chain Services to properly denote its corporate status."  (ECF No. 34 at PageID 182.)  The proposed Second Amended Complaint states "[a] review of the Michigan Secretary of State's website reveals that there are no member associations for this unincorporated entity."  (ECF No. 34-1 at PageID 186.)  And Gross's Response to Epes's and Palogix's Motion to Dismiss states "[t]he diversity member issue concerns only Palogix, LLC, and no members of the LLC are listed on the Michigan Secretary of State website. The District Court should permit counsel to make the necessary corrections and perfect service if needed."  (ECF No. 34 at PageID 182.)

But the party invoking diversity jurisdiction bears the burden of proving the citizenship for all parties.  *Akno 1010 Mkt. St. St. Louis Missouri LLC v. Pourtaghi,* 43 F.4th 624, 627 (6th Cir. 2022); *see Hertz Corp. v. Friend*, 559 U.S. 77, 97 (2010).  And the Supreme Court has consistently interpreted 28 U.S.C. § 1332 to require complete diversity of citizenship between plaintiffs and defendants.  *See Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 553 (2005); *Strawbridge v. Curtiss*, 7 U.S. 267 (1806).  And so Gross has the burden of establishing that he has diversity of citizenship with all of Palogix's members and sub-members.

He has not done so in any of his complaints.  First, the Amended Complaint is inadequate because it does not reference any of Palogix's members or sub-members, let alone their citizenship.  Second, even the proposed Second Amended Complaint is inadequate.  After a

---

[12] Although Epes and Palogix are the only Defendants to raise the issue of the Court's subject matter jurisdiction, the Court considers it *sua sponte* for Defendants Ford and Schneider.

21

search of the Michigan Secretary of State's website, Gross concludes that "there are no member associations for this unincorporated entity." (ECF No. 34-1 at PageID 186.) But the Court's review of the state of Michigan's MiBusiness Registry Portal for "Palogix Supply Chain Services LLC" reveals that Palogix is a Delaware limited liability company registered to do business in Michigan. *See Business Search*, MiBusiness Registry, https://mibusinessregistry.lara.state.mi.us/search/business (last visited Mar. 17, 2026). Gross's burden of proving this Court's subject matter jurisdiction over this suit is not satisfied by searching one database, the wrong database at that, and then giving up. Allowing Gross to amend his Complaint a second time still would not assure the Court that it would have subject matter jurisdiction over these claims.

Because Gross has no remaining federal claims, the Court chooses not to exercise supplemental jurisdiction over his pendant state claim of intentional interference with business relationships. *See, e.g., Stanley v. W. Michigan Univ.*, 105 F.4th 856, 867 (6th Cir. 2024) ("District courts do not have to exercise supplemental jurisdiction, and they may decline to do so if, as relevant here, 'the district court has dismissed all claims over which it has original jurisdiction[.]'.") And Gross has not met his burden of showing the Court that there is complete diversity such that it has subject matter jurisdiction under 28 U.S.C. § 1332. Further, the Court finds that the Second Amended Complaint would not remedy the problems in the Amended Complaint.

The Court therefore **GRANTS** Defendants' Motions to Dismiss on the grounds that this Court lacks subject matter jurisdiction to hear the suit. It **DISMISSES** Gross's intentional

22

interference with business relationships and § 1985(3) claims **WITHOUT PREJUDICE**.[13]  The Court **DISMISSES** Plaintiff's First Amendment, Equal Protection Clause, and § 1985(2) claims **WITH PREJUDICE**.  The Court also **DENIES** Gross's Motion for a Preliminary Injunction as moot.

### CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Motions to Dismiss. It **DISMISSES** Gross's intentional interference with business relationships and § 1985(3) claims **WITHOUT PREJUDICE**.  The Court **DISMISSES** Plaintiff's First Amendment, Equal Protection Clause, and § 1985(2) claims **WITH PREJUDICE**.  The Court also **DENIES** Gross's Motion for a Preliminary Injunction as moot.

**SO ORDERED**, this 26th day of March, 2026.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE

---

[13] The Court declines to reach whether Gross plausibly pleaded his intentional interference with business relationships claims, his theories of liability for Ford, or any theories of aiding and abetting liability because deciding those issues are unnecessary for its decision here.

23